UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DENNIS MICHAEL PERKS ,

       Petitioner,

                                    CASE NO. 05-CV-72657-DT
   v.                              JUDGE BERNARD FRIEDMAN
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

DOUGLAS VASBINDER,

       Respondent.

_____/


**REPORT AND RECOMMENDATION**


*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Probation Violation* . . . . . . . . . . . 4
     C.    *Exhaustion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     E.    *Claim I: The Denial of An Appeal of Right* . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     F.    *Claim II: Denial of Due Process in Revoking Probation* . . . . . . . . . . . . . . . . . 17
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . 21

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Dennis Michael Perks is a state prisoner currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2.      On January 21, 2001, petitioner was found guilty of violating probation after a contested probation violation hearing in Livingston County Circuit Court.  He was sentenced immediately thereafter for the original conviction of resisting and obstructing a police officer, MICH. COMP. LAWS § 750.479, as a fourth offender, MICH. COMP. LAWS §769.12, to a term of 6 to 15 years' imprisonment.

3.      Petitioner, through counsel,  sought to appeal  as of right to the Michigan Court of Appeals.  The Michigan Court of Appeals dismissed the claim of appeal for lack of jurisdiction. *People v. Perks*, No. 237337  (Mich. Ct. App. December 7, 2001).  Petitioner applied for leave to appeal the order of dismissal to the Michigan Supreme Court, raising the following claim:

> I.      THE COURT OF APPEALS VIOLATED APPELLANT'S RIGHT UNDER MICHIGAN LAW TO AN APPEAL OF RIGHT FROM A PRISON SENTENCE FOLLOWING A CONTESTED PROBATION REVOCATION HEARING.

The Michigan Supreme Court granted the delayed application for leave to appeal on  November 19, 2002. *People v. Perks,* 467 Mich. 899, 654 N.W.2d 330 (2002).  On July 31, 2003 the court vacated the Court of Appeals order dismissing the claim and remanded the case to the Court of Appeals for consideration of whether petitioner was entitled to an appeal as of right.  *People v. Perks,* 469 Mich. 866, 666 N.W.2d 267 (2003).  On October 16, 2003 the Court of Appeals issued an opinion

2

upholding its original order, finding that petitioner had  no right to appeal but could apply for leave to appeal.  *People v. Perks*, 259 Mich. App. 100, 672 N.W.2d 902 (2003).  The Michigan Supreme Court denied petitioner's application for leave to appeal that decision on April 2, 2004. *People v. Perks,* 469 Mich. 1030, 676 N.W.2d 625 (2004).  Petitioner's motion for reconsideration was denied on June 30, 2004.  *People v. Perks,* 469 Mich. 1030, 682 N.W.2d 94 (2004).

    4.    Petitioner, during the pendency of the above proceedings, also filed a delayed application for leave to appeal to the Michigan Court of Appeals, raising the following claim:

> I.    THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY REVOKING APPELLANT'S PROBATION AND IMPOSING A PRISON SENTENCE IN PART BASED ON UNCHARGED CONDUCT INVOLVING ALLEGED OBSTRUCTION OF JUSTICE.

The Michigan Court of Appeals denied leave to appeal "for lack of merit" in a standard order, *People v. Perks*, No. 243991  (Mich. Ct. App. November 13, 2002), and denied rehearing.  *People v. Perks*, No. 243991  (Mich. Ct. App. January 2, 2003.  Petitioner sought leave to appeal the same issue to the Michigan Supreme Court.  The Supreme Court denied leave to appeal in a standard order on April 30, 2004.  *People v. Perks,* 470 Mich. 852, 679 N.W.2d 74 (2004).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 6, 2005.  As grounds for the writ of habeas corpus, he states his claim as follows:

> I.    THE COURT OF APPEALS VIOLATED PETITIONER'S RIGHT UNDER MICHIGAN AND DUE PROCESS LAW TO AN APPEAL OF RIGHT FROM A PRISON SENTENCE FOLLOWING A CONTESTED PROBATION REVOCATION HEARING.

Petitioner however also argues in the body of his petition that his federal due process rights were violated because of the reliance on uncharged misconduct and because  there was insufficient

evidence of the charged violations. This will be treated as Claim II.[1]

6.      Respondent filed his answer on January 5, 2006. He contends that petitioner's claims are "not cognizable, unexhausted, or without merit." Respondent's Answer in Opposition to Petition for Writ of Habeas Corpus, p. 5.

B.      *Factual Background Underlying Petitioner's Probation Violation*

Petitioner pled no contest on February 18, 1999 to one count of resisting and obstructing a police officer and one count of domestic violence second offense, MICH. COMP. LAWS § 750.81. He was sentenced on March 19, 1999 for the resisting and obstructing conviction as a fourth offender to three years probation with the first six months in jail and for the domestic violence conviction to concurrent two years probation.

On August 30, 2001, a petition and bench warrant for probation violation were issued.. The petition alleged two violations of the conditions of probation: 1) petitioner engaged in assaultive, threatening or intimidating behavior on June 30, 2001, by pushing Theresa Haapala to the ground and striking her with his vehicle; and 2) petitioner engaged in assaultive, threatening or intimidating behavior on July 22, 2001, by pushing Theresa Haapala to the floor on three occasions and by striking her on the back of the head. The charged violations pertained only to the resisting and obstructing probationary sentence, petitioner having been discharged from the domestic violence sentence.

On the date scheduled for the contested hearing, the trial court granted a one day adjournment to secure appointed counsel for petitioner. Later that day the prosecutor moved to

---

[1]     Habeas petitions prepared *pro se* are held to less stringent pleading standards than petitions prepared by counsel and are to be liberally construed. See *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

revoke petitioner's bond, alleging that petitioner had approached the prosecution's witnesses and had caused them to try to leave the courthouse. The court attempted to question prospective witnesses Teresa Haapala and Phillip D'Angelo about this, but both responded, "I plead the Fifth." (9/20/01 Probation Violation Hearing Transcript, pp.6-7).

The contested hearing was conducted the following day. The judge commenced the hearing by informing petitioner of the two specific charged violations. The prosecutor called five witnesses. Many of the questions asked Haapala and D'Angelo concerned petitioner's alleged attempts to influence them the previous day.

Probation agent Eric Rose testified that one of petitioner's conditions of probation was that he not engage in assaultive or intimidating behavior. Rose interviewed Teresa Haapala, and she reported to Rose that on June 30, 2001, petitioner knocked her to the ground two or three times, struck her with the palm of his hand, threatened to hit her car with his car and, when she stepped between the two vehicles, drove his car into her and knocked her to the ground. Haapala also reported that on July 22, 2001 petitioner struck her. She did not report any injuries.

Officer Ron Crowe testified that he responded to a report of a verbal domestic dispute on June 30, 2001, and Haapala reported that her live-in boyfriend (petitioner) had pushed her around, damaged her vehicle and then left the premises.

Officer Rick Ickes testified that he responded to a report of a disturbance on July 22, 2001. He found Haapala sitting on the lawn, crying. She reported that petitioner had hit her in the head and pushed her to the floor. She was intoxicated. Petitioner had two cuts, on his hand and on his cheek, and Ickes complied with his request to be taken to the hospital.

Phillip D'Angelo, a neighbor, testified that on June 30, 2001, he witnessed Haapala and

petitioner arguing. Haapala wanted to leave but petitioner would not let her. Petitioner blocked her in with his vehicle and proceeded to back into her car. Haapala got in front of petitioner's car. Petitioner nudged her with his car and she fell to the ground. D'Angelo called the police.

On cross-examination, counsel for petitioner questioned D'Angelo as to why he would testify now when he had refused to answer the judge's questions the previous day. The trial court and the prosecutor followed up with several questions of their own about the previous day's events and elicited that petitioner had told the witness to claim his Fifth Amendment right not to testify. At one point the court accused the witness of not telling the whole story and directed the prosecutor to continue this line of questioning. The prosecutor elicited that Haapala and petitioner had agreed that he would give Haapala her car back and she would walk out of the courthouse.

Teresa Haapala testified that she and petitioner were fighting on June 30, 2001 and petitioner called the police. Petitioner had threatened to ram into her Camaro so she stood in front of it. Petitioner "nudged his car forward" and knocked her down. (9/21/01 Probation Violation Hearing Transcript, p. 42). Petitioner had left by the time the police arrived. On another occasion, in July of 2001, she and petitioner were fighting again and petitioner pushed her down more than once and hit her in the head with the palm of his hand. She suffered no injuries on either occasion. She admitted that petitioner had obtained a restraining order against her and that at the times in question she was violating the order by living with him.

On cross-examination counsel for petitioner asked Haapala if on the previous day in the hallway the prosecutor had threatened to prosecute her if she did not pursue the charges against petitioner. The witness denied this. The prosecutor on redirect examination elicited that petitioner had told her the previous day that she could have the Camaro if she left and did not testify. She

agreed to pay him $950. She denied that petitioner told her to "take the Fifth Amendment." (9/21/01 Probation Violation Hearing Transcript, p. 48). She explained that it was "Lou" [Louis] Marrow, petitioner's friend, who told her that.

Three witnesses testified for the defense, Louis Morrow, Dawn Morrow and petitioner. At the beginning of Louis Morrow's testimony, the court had Officer Ickes give the witness Miranda warnings.

Louis Morrow testified that he is a friend and neighbor of petitioner. One day in July of 2001, he witnessed Haapala screaming at petitioner and trying to hit him. He did not see petitioner strike her. Morrow had his wife call the police and when the police arrived they had to pull Haapala off of petitioner. On one occasion when Haapala was drunk, the witness heard her threaten to lie and have petitioner put in jail.

Counsel for petitioner also elicited from Morrow that on the previous day he and counsel had discussed the question of who is entitled to claim a right not to testify under the Fifth Amendment. Morrow further responded that counsel had also explained to him that if Haapala testified to something different from that which she had told the police, she might be charged with making a false police report. On redirect examination the prosecutor elicited that the witness had initiated this discussion with defense counsel because he was concerned for Haapala, who had indicated to Morrow that she did not want to be there [in court]. Morrow further explained that after speaking with defense counsel, he suggested to Haapala that if she was uncomfortable she might need a lawyer and maybe should "plead the Fifth" (9/21/01 Probation Violation Hearing Transcript, p. 47) and that D'Angelo was participating in this conversation as well. The trial court also questioned Morrow about his actions on the previous day and elicited that Morrow had repeated something

7

brief and vague about taking the Fifth Amendment to Haapala and D'Angelo in the courtroom just before the court called them to the bench.

Dawn Morrow testified that she witnessed Haapala hit petitioner and that she had never seen petitioner hit her. She also heard Haapala state that she would lie to the police to get petitioner in trouble.

Petitioner testified in his own defense. He had known Haapala since January of 2001; they had lived together for a year and a half and they had a child together. Haapala would become drunk and violent so petitioner removed the child from her home and he had custody. One night she came home drunk and petitioner told her to move out. She attacked him and was still beating on him when the police arrived and arrested her. This was the incident that the Morrows had witnessed. Haapala went to jail and was very angry with petitioner over that. She contacted petitioner's probation agent and she told petitioner that he was going to jail and then she would get custody of their child.

On June 30, 2001, they argued over her car. He owned it by then and she refused to pay for it and he did not want her drinking and driving it. He refused to let her take it and blocked it in with his car. She jumped on the hood of his car and beat on it but he did not touch her with his car. On July 22, 2001, Haapala was drunk and kept hitting him repeatedly until he called the police. When the police arrived she reported that he had beaten her. Petitioner had cuts on his face and was taken to the hospital.

On cross-examination the prosecutor questioned petitioner about his contact with Haapala in the courthouse the previous day. Petitioner explained that Haapala told him that the reason she was making up the accusations against him was that she wanted her car back and that he and Haapala worked out a payment schedule for the car. She told petitioner she would talk to the

prosecutor.

At the end of the proofs, the prosecutor argued that he had proven the two charged violations.

The court specifically found that petitioner had committed these two violations:

> Mr. Perks is on probation to me pursuant to an order of this Court and was on probation on June 30th and July 22nd pursuant to that order. It was signed by me March 24th 1999. And condition five is the condition which is referred to here, "must not engage in any assaultive, threatening, or intimidating behavior." The order was signed by Mr. Perks. He indicated by his signature that he read or heard the above order of probation and received a copy, and he understood and agreed to comply with the order. And he signed it on March 19th 1999.

> I'm satisfied from the testimony that has been brought forth from the witnesses that he indeed--indeed did engage in assaultive, threatening, and intimidating behavior on about June 30th of this year in which he pushed the complainant Teresa Haapala to the ground. And I'm satisfied that he struck her with his vehicle as well.

> I'm also satisfied that he violated condition number five on the 22nd of this year with assaultive, threatening, or intimidating behavior involving the same complainant pushing her to the floor on three occasions and striking her on the back of the had at least several times.

> I find him guilty of probation violation.

(9/21/01 Probation Violation Hearing Transcript, pp. 108-109).

The court immediately moved on to sentencing. After listening to the prosecutor argue for a seven year prison sentence and the defense attorney argue for no more than "a minimal term," and after petitioner had spoken and tried to explain that the problem was Haapala, the court made the following comments before imposing the six to fifteen year sentence:

> Blaming it on her doesn't make it in my mind because she called the police or the police were called for the incident. The report was made. You contact--you made the report of the police contact. They followed up on it. They talked to her, got the information. She wasn't the moving force behind it.

> And I'm concerned about what happened in this court as it relates to those witnesses. There was in my opinion an attempt to obstruct justice in this court. I don't have any question in my mind about it. Those witnesses came up here yesterday and very

9

quickly took the Fifth Amendment.  And that was on the motion for bond.  I guess that will be for another day.  But I am concerned that there was an attempt to obstruct justice in this case to prevent this hearing from going forward, to prevent these witnesses from testifying. Suggestion that they take the Fifth was shallow.

(9/21/01 Probation Violation Hearing Transcript, pp. 114-115).

The court then informed petitioner of his appellate rights, including: "If you're dissatisfied with this sentence, you may file an application for leave to appeal.  If you wish to do so, you must do so within 42 days.  You have the right to appeal in this matter."  The court concluded with, "And of course, probation is revoked." (9/21/01 Probation Violation Hearing Transcript, p. 115).

Petitioner timely requested appellate counsel and the trial court entered a form Claim of Appeal and Order Appointing Counsel. The Michigan Court of Appeals dismissed the claim and held that petitioner was not entitled to an appeal of right.

C.    *Exhaustion*

In the state appellate courts, petitioner claimed that as a matter of Michigan law he was entitled to an appeal of right from a contested probation revocation hearing and the Michigan Court of Appeals, in the last reasoned opinion, determined that under Michigan law he was only entitled to appeal by  leave.  *People v. Perks*, 259 Mich. App. 100, 672 N.W.2d 902 (2003).  In his habeas petition petitioner now additionally claims that it was a violation of the Due Process Clause to deny him an appeal of right.  Respondent correctly argues that petitioner has not exhausted this federal constitutional claim.

In his current Claim II petitioner not only raises the due process violation that he raised in the state appellate courts (the reliance on uncharged conduct in revoking probation), he also claims a further constitutional violation in that there was no "physical or tangible evidence" to support the revocation. Petitioner's Memorandum of Law, p. 4.  Respondent correctly argues that petitioner has

10

not exhausted this part of Claim II.

The federal habeas statute provides in relevant part that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State [.]" 28 U.S.C. § 2254(b)(1)(A).   The exhaustion requirement serves the interests of comity and federalism and  requires that the state court have the first opportunity to correct a constitutional violation.   *Rhines v. Weber*, 544 U.S. 269, 273-274 (2005); *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005).   To satisfy the exhaustion requirement a petitioner must  "fairly present" the substance of  his federal constitutional claim to the state courts.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir.2004).   A petitioner "fairly presents" his claim to the state courts by either (1) relying upon federal cases employing federal constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal constitutional law. See *Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878 (6th Cir.2003)). Petitioner did not fairly present the indicated claims of  federal constitutional violations to the Michigan courts.

Petitioner did exhaust one claimed due process violation in Claim II.   A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. See *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir.2000).

While a district court has discretion in limited circumstances under the AEDPA to hold

11

mixed petitions in abeyance to allow the petitioner to return to state court to exhaust all of his claims, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines v. Weber*, 544 U.S. at 277.

Likewise, a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). Thus a federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir.1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir.1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims. See *Cain*, 947 F.2d at 820.

Because as discussed below petitioner is not entitled to relief on either of his claims, the Court should dismiss the claims on the merits rather than require further review in the state courts.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

12

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

13

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.     *Claim I: The Denial of An Appeal of Right*

Petitioner claims that as a matter of Michigan law and federal due process he was entitled to an appeal of right from the contested probation revocation hearing.

The Michigan Court of Appeals, in the last reasoned opinion, determined that under Michigan law he was only entitled to appeal by leave.  The court analyzed the language of Article 1, § 20 of the Michigan Constitution[2], which was amended after Michigan voters in 1994 ratified

---

[2] "In every criminal prosecution, the accused shall have the right ... to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court."

14

a proposal to amend the constitution in order to limit criminal appeals from plea-based convictions[3], and the language utilized in the implementing Michigan statutes and court rules.  It concluded that consistent with the intent of the legislature and the voters the language meant that if the final order or judgment sought to be appealed is "based upon" a plea of guilty or no contest a defendant may only seek appellate review by application.  *People v. Perks*, 259 Mich. App. at 107-108.  The court then interpreted the language in Mich. Comp. Law § 771.4 (a probationer is to be "sentence[d] in the same manner and to the same penalty as the court might have done if the probation order had never been made") and the Michigan Supreme Court decision in *People v. Kaczmarek*, 464 Mich. 478, 628 N.W.2d 484 (2001) (recognizing that a finding of probation violation is not a new conviction) to mean that the judgement of sentence that petitioner was seeking to appeal was "based upon" his no contest plea to the underlying offense and therefore could not be appealed of right. The court recognized that its decision conflicted with the language of Mich. Ct. R. 6.445(H), which directed the trial court to advise a probationer found guilty of a violation and sentenced to imprisonment that he has a right to appeal if the conviction occurred at a contested hearing and was entitled to apply for leave to appeal if the conviction was by a plea of guilty.  The court concluded that this language was not in accord with the controlling law.[4]

Respondent argues that petitioner's claim is not cognizable because it is based on a question of state law.

---

[3] Prior to 1994, the Michigan Court of Appeals adjudicated appeals as of right for all criminal convictions.

[4] MCR 6.445(H) has since been amended, effective May 1, 2005, and now requires a sentencing judge to advise a probationer whose probation is revoked that the probationer is entitled to appeal by right if the probationer's underlying conviction resulted from a trial, and that the probationer is entitled to file an application for leave to appeal if the underlying conviction resulted from a plea of guilty or nolo contendere.

Generally a claim that a state trial court violated state law is not cognizable in federal habeas corpus. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983). It is not the function of a federal habeas court to review a state court's interpretation of its own law or constitution. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Only errors of state law that result in a denial of fundamental fairness are cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Federal Constitution does not require the States to grant appeals of right to criminal defendants. *McKane v. Durston*, 153 U.S. 684 (1894). "[W]hether an appeal should be allowed, and if so, under what circumstances or on what conditions, are matters for each State to determine for itself." *Id.* at 688. However if a State has created appellate courts as "an integral part of the ... system for finally adjudicating the guilt or innocence of a defendant," *Griffin v. Illinois*, 351 U.S.12, 18 (1956), the procedures used in deciding the appeals must comport with the requirements of the due process and equal protection clauses of the Constitution. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *see also Douglas v. California*, 372 U.S. 353 (1963). "The equal protection concern relates to the legitimacy of fencing out would-be appellants based solely on their inability to pay core costs," while "[t]he due process concern homes in on the essential fairness of the state-ordered proceedings." *M.L.B. v. S.L.J.,* 519 U.S. 102, 120 (1996).

The Michigan Court of Appeals' interpretation of Michigan law to mean that petitioner is not entitled to an appeal of right is not reviewable in this federal habeas proceedings. "State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254." *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002).

16

Nor has petitioner demonstrated that the state court's interpretation denied him equal protection or fundamental fairness.  While petitioner did not have an appeal of right, he was appointed appellate counsel who filed an application for leave to appeal to the Michigan Court of Appeals on his behalf.   No doubt petitioner would have preferred a written opinion analyzing the merits of his substantive claim to the cursory order denying leave for lack of merit.  However, the differences between the two appellate avenues do not establish that petitioner received less than that which is constitutionally guaranteed.  As observed by the United States Supreme Court, review of an application for leave to appeal by the Michigan Court of Appeals, like an appeal of right,  entails evaluation of the merits of the applicant's claims and error correction.   *Halbert v. Michigan*, __U.S.__, 125 S.Ct. 2582, 2590,162 L.Ed.2d 552 (2005).[5]  See *also Walker v. McKee*, 366 F.Supp.2d 544, 549 (E.D. Mich. 2005) *(*Although appellate counsel was ineffective in failing to preserve petitioner's appeal of right, petitioner could not establish prejudice because the Michigan Court of Appeals reviewed his delayed application for leave to appeal:  "Although the Michigan Court of Appeals did not address the merits of the grounds raised in a written opinion, this Court cannot conclude that the Michigan Court of Appeals' evaluation should be presumed to be unreliable." *Id.* at 59).

The court should conclude that Petitioner was afforded all that the Constitution guarantees and that the decision of the Michigan Court of Appeals was neither contrary to nor an unreasonable application of Supreme Court law.

F.      *Claim II: Denial of Due Process in Revoking Probation*

---

[5]     Because of these like functions and because an appeal by leave to the Michigan Court of Appeals is also a first-tier review, *Halbert* held that the constitution required the appointment of counsel for indigent defendants who pled guilty and sought review by leave.

Petitioner claims as he did in the state appellate courts that his rights to due process were violated when his probation was revoked and a prison sentence imposed in part on the basis of uncharged conduct, specifically his alleged attempt to dissuade the prosecution's witnesses from testifying.  He also now claims that his due process rights were further violated because there was no evidence to support the revocation.  Respondent answers that the trial court did not abuse its discretion in revoking probation and that petitioner has failed to establish that his constitutional rights were violated.

Where a state court decides a constitutional issue by form order the habeas court conducts an independent review of the record and applicable law.  Nonetheless, the inquiry remains whether the state court result is contrary to or unreasonably applies clearly established federal law.  *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000).

Petitioner correctly cites Michigan law for the principle that "only evidence relating to charged probation violation activity may be considered at a probation violation hearing, and only such evidence may provide the basis for a decision to revoke an order of probation."  *People v. Graber*, 128 Mich. App. 185, 193, 339 N.W.2d 866 (1983).   *See also People v. Laurent*, 171 Mich.App. 503, 506, 431 N.W.2d  (1988) ( "Only the conduct charged in the petition may be used to determine if there is a violation of probation. Further, if the court finds that the probationer has violated a condition of probation, only the conduct charged in the petition may be considered in deciding whether probation should be revoked as a result of the charged violation.").   The reason for this rule is apparently to ensure that the probationer has adequate notice to defend against the charges. *See People v. Banks*, 116 Mich.App. 446, 448, 323 N.W.2d 436 (1982).

18

2:05-cv-72657-BAF-PJK   Doc # 26   Filed 07/17/06   Pg 19 of 22   Pg ID 625

There was much testimony at the probation violation hearing relating to petitioner's alleged attempt to influence two of the prosecution's witnesses and the trial court's questions and comments showed that it was very much interested in the uncharged misconduct.   However, the testimony came in without objection and the subject was in fact first introduced by defense counsel.   The evidence served legitimate purposes unrelated to the question of whether probation had been violated or should be revoked.   Evidence that a defendant tried to influence a witness is generally admissible to show either the defendant's consciousness of guilt,   *People v. Sholl*, 453 Mich. 730, 740, 556 N.W.2d 851 (1996), or the witness's bias, *People v. Johnson*, 174 Mich. App. 108, 11, 435 N.W.2d 465 (1989).

The trial court did make it clear that it was relying on the evidence of the *charged* misconduct in finding that petitioner violated his probation.   It is not clear whether the trial court relied on the alleged obstruction of justice in deciding to revoke probation, but the record suggests that the court utilized the evidence of this misconduct only in formulating the length of the prison sentence.   The trial court's stated consideration of the uncharged misconduct came during the sentencing phase of the hearing and "statements at the sentencing proceeding may be separated from those made at the revocation hearing" in determining whether "extra-notice matters" were considered in revoking a defendant's probation."   *People v. Banks*, 116 Mich.App. 448- 449.   The arguments of counsel at this phase and the length of the sentence imposed make it appear that continuation of probation rather than revocation was not even a consideration once the violations had been found.   The trial court's consideration of the uncharged conduct in formulating the sentence was not improper.   Although a sentencing court may not make an independent finding of guilt of a crime other than that for which the defendant is being sentenced, *People v. Fleming*, 428

19

Mich. 408, 417-418, 410 N.W.2d 266 (1987), it may take into account facts underlying uncharged offenses, *People v. Ewing (After Remand)*, 435 Mich. 443, 446 (Brickley, J.), 473 (Boyle, J.), 458 N.W.2d 880 (1990).

Even if the trial court violated the principle of Michigan law that uncharged conduct cannot be considered in determining whether to revoke probation, habeas relief cannot be granted on the basis of a perceived error of state law. *Sanford v. Yukins,* 288 F.3d at 860. The federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. at 67-68.

The United States Supreme Court has established the federal due process requirements for revoking probation. See *Gagnon v. Scarpelli,* 411 U.S. 778 (1973); *Morrissey v. Brewer*, 408 U.S. 47 (1972). The requirements are (a) written notice of the claimed violations of probation, (b) disclosure to the probationer of the evidence against him, (c) an opportunity to be heard in person and to present witnesses and documentary evidence, (d) the right to confront and cross-examine adverse witnesses unless there is good cause to disallow confrontation, (e) a neutral and detached hearing body and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. S*ee Gagnon* at 786, adopting the requirements for parole revocation established in *Morrissey*, 408 U.S. at 489. In some circumstances the probationer also has a right to the assistance of counsel. *Gagnon* at 790.

Although the Supreme Court has not specifically held that the Due Process Clause requires sufficiency of the evidence of probation violation, it has suggested this. *See Black v. Romano*, 471 U.S. 606. 615-616 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process. In conformance with *Gagnon* and *Morrissey*, the State afforded respondent a final

20

revocation hearing. The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation.")  *See also  Douglas v. Buder*, 412 U.S. 430 (1973) (per curiam ) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated).  The Supreme Court has likewise indicated that  proof beyond a reasonable doubt is not required for probation revocation. *See Sampson v. California,* 126 S.Ct. 2193, 2197-2198 (2006), discussing *United States v. Knights*, 534 U.S. 112, 120 (2001).  In Michigan  the prosecution bears the burden of establishing a probation violation by a preponderance of the evidence.  *People v. Ison*, 132 Mich.App. 61, 66, 346 N.W.2d 894 (1984).

There is no question but that the due process requirements were met in petitioner's case.  He was given written notice of the charged violations and he had a contested hearing where he was represented by counsel, confronted the prosecution's witnesses and presented witnesses in his own defense and where the trial court made findings of the charged violations on the record.  Nor was there a failure of proof: the evidence presented on the charged violations was more than sufficient to sustain the conclusion that petitioner had physically assaulted Teresa Haapala on each of the two dates alleged.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

21

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: July 17, 2006

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 17, 2006.
>
>                         s/Eddrey Butts
>                         Case Manager

22